[982 NE2d 609, 958 NYS2d 689]

IRB-Brasil Resseguros, S.A., Respondent, v Inepar Investments, S.A., Defendant, and Inepar S.A. Industria e Construções, Appellant.

Argued October 11, 2012; decided December 18, 2012

## POINTS OF COUNSEL

*Hoguet Newman Regal & Kenney, LLP*, New York City (*Frederic S. Newman* and *Helene R. Hechtkopf* of counsel), for appellant. I. The decision below misread both New York General Obligations Law § 5-1401 and the choice-of-law provision contained in the guarantee. (*City of Sterling Hgts. Police & Fire Retirement Sys. v Abbey Natl., PLC*, 423 F Supp 2d 348; *Carlos v Philips Bus. Sys., Inc.*, 556 F Supp 769; *Colt Indus., Inc. v Fidelco Pump & Compressor Corp.*, 700 F Supp 1330; *600 Grant St. Assoc. Ltd. Partnership v Leon-Dielmann Inv. Partnership*, 681 F Supp 1062; *Indosuez Intl. Fin. v National Reserve Bank*, 98 NY2d 238; *Lake County v Rollins*, 130 US 662; *Hooper Assoc. v AGS Computers*, 74 NY2d 487; *Ehrlich-Bober & Co. v University of Houston*, 49 NY2d 574; *Auten v Auten*, 308 NY 155; *Haag v Barnes*, 9 NY2d 554.) II. A proper conflicts analysis requires that Brazilian law apply to the guarantee and in Brazil the guarantee is void. (*Indosuez Intl. Fin. v National Reserve Bank*, 98 NY2d 238; *Zurich Ins. Co. v Shearson Lehman Hutton*, 84 NY2d 309; *Pension Comm. of Univ. of Montreal Pension Plan v Banc of Am. Sec., LLC*, 446 F Supp 2d 163; *Hart v General Motors Corp.*, 129 AD2d 179; *Edgar v MITE Corp.*, 457 US 624; *Memphis Biofuels, LLC v Chickasaw Nation Indus., Inc.*, 585 F3d 917; *Sanderlin v Seminole Tribe of Fla.*, 243 F3d 1282.)

*Skadden, Arps, Slate, Meagher & Flom LLP*, New York City (*Lea Haber Kuck, Elizabeth A. Hellmann, Sarah H. Yardeni* and

*Amanda Raymond Kalantirsky* of counsel), for respondent. I. The Appellate Division correctly concluded that, under General Obligations Law § 5-1401, New York law governs this dispute. (*Scherk v Alberto-Culver Co.*, 417 US 506; *Tosapratt, LLC v Sunset Props., Inc.*, 86 AD3d 768; *Bank of Am. Natl. Trust & Sav. Assn. v Envases Venezolanos, S.A.*, 740 F Supp 260, *affd sub nom. First Natl. Bank Md. v Envases Venezolanos*, 923 F2d 843; *McPhee v General Elec. Intl., Inc.*, 736 F Supp 2d 676; *Economu v Borg-Warner Corp.*, 652 F Supp 1242, 829 F2d 311; *Matter of Propulsora Ixtapa Sur, S.A. De C.V. [Omni Hotels Franchising Corp.]*, 211 AD2d 546; *Mechoshade Corp. v Designed Performance Assoc., Inc.*, 11 Misc 3d 1081[A], 2006 NY Slip Op 50636[U]; *Sun Forest Corp. v Shvili*, 152 F Supp 2d 367; *Philips Credit Corp. v Regent Health Group, Inc.*, 953 F Supp 482; *600 Grant St. Assoc. Ltd. Partnership v Leon-Dielmann Inv. Partnership*, 681 F Supp 1062.) II. Even under a common-law conflict-of-laws analysis, New York law governs. (*Matter of Allstate Ins. Co. [Stolarz—New Jersey Mfrs. Ins. Co.]*, 81 NY2d 219; *Indosuez Intl. Fin. v National Reserve Bank*, 98 NY2d 238; *SNS Bank v Citibank*, 7 AD3d 352; *J. Aron & Co. v Chown*, 231 AD2d 426; *Pension Comm. of Univ. of Montreal Pension Plan v Banc of Am. Sec., LLC*, 446 F Supp 2d 163; *Zurich Ins. Co. v Shearson Lehman Hutton*, 84 NY2d 309; *Welsbach Elec. Corp. v MasTec N. Am., Inc.*, 7 NY3d 624; *Finucane v Interior Constr. Corp.*, 264 AD2d 618; *Hart v General Motors Corp.*, 129 AD2d 179; *Edgar v MITE Corp.*, 457 US 624.)

**OPINION OF THE COURT**

Chief Judge LIPPMAN.

The issue before the Court is whether a conflict-of-laws analysis must be undertaken when there is an express choice of New York law in the contract pursuant to General Obligations Law § 5-1401. We hold that the need for a conflict-of-laws analysis is obviated by the terms of the parties' agreement.

Defendant Inepar S.A. Industria e Construções (IIC) is a Brazilian power company which held a 60% stake in defendant Inepar Investments, S.A. (Inepar), a corporation organized under the laws of Uruguay. IIC specializes in providing equipment and services for the generation, transmission, distribution, and consumption of electric power.

In September 1996, Inepar issued $30 million in Global Notes in the Guaranteed Euro Medium-Term Note Program (the

Global Note Program) in order to raise capital and refinance debt previously incurred by Inepar and IIC. The Global Notes were denominated in U.S. dollars, issued on September 30, 1996, matured on October 1, 2001, and paid interest at a fixed rate of 9.9% per annum. A Fiscal Agency Agreement (the Agreement) between Inepar as issuer, IIC as guarantor, and the Chase Manhattan Bank as the fiscal and paying agent, governed the Global Note Program. IIC provided in a Guarantee to "unconditionally and irrevocably guarantee . . . the due and punctual payment of principal and interest" under the terms of the Global Notes. The Agreement stated that "[t]his Agreement, the Notes, and the Guarantees shall be governed by, and construed in accordance with, the laws of the State of New York, without regard to conflict of laws principles." The Guarantee provided that it would be "governed by, and . . . be construed in accordance with, the laws of the State of New York." New York was designated as the venue in the Guarantee, and thereunder IIC submitted to the jurisdiction of New York courts.

Plaintiff IRB-Brasil Resseguros, S.A. (IRB), a 50% state-owned corporation organized under the laws of Brazil, bought $14 million of Inepar's Global Notes through brokers Smith Barney and Lehman Brothers. IRB received eight interest payments on the Global Notes between April 1997 and October 2000. The interest payments ceased after October 2000, and IRB never received the payment of the principal of $14 million from either IIC or Inepar.

IRB commenced the instant action against IIC and Inepar seeking payment of the Global Note principal and the unpaid accrued interest. Inepar defaulted in this action, and IIC moved for summary judgment, arguing that the Guarantee was void under Brazilian law because it was never authorized by IIC's board of directors. IIC claimed that New York's conflict-of-laws principles should apply, resulting in the application of Brazilian substantive law. IRB also moved for summary judgment. Supreme Court denied IIC's motion and granted IRB summary judgment on the issue of liability only. A Special Referee appointed to hear and determine the issue of damages directed that judgment be entered against IIC in the sum of $27,772,409.86 and that interest on the award be paid at a 9.9% rate. Supreme Court ruled that "a choice-of-law clause in the agreement denoting that New York law governs the parties['] rights and obligations, shall be given mandatory effect" under

General Obligations Law § 5-1401 (2009 NY Slip Op 31723[U], *16 [Sup Ct, NY County 2009]).

The Appellate Division modified the judgment only to the extent of limiting the rate of postjudgment interest to the statutory rate of 9% per year, and otherwise affirmed (83 AD3d 573 [1st Dept 2011]). This Court granted leave to appeal (17 NY3d 717 [2011]), and we now affirm.

General Obligations Law § 5-1401 (1) states in relevant part:

> "The parties to any contract . . . arising out of a transaction covering in the aggregate not less than two hundred fifty thousand dollars . . . may agree that the law of this state shall govern their rights and duties in whole or in part, whether or not such contract, agreement or undertaking bears a reasonable relation to this state."

The Legislature passed the statute in 1984 in order to allow parties without New York contacts to choose New York law to govern their contracts. Prior to the enactment of section 5-1401, the Legislature feared that New York courts would not recognize "a choice of New York law [in certain contracts] on the ground that the particular contract had insufficient 'contact' or 'relationship' with New York" (Sponsor's Mem, Bill Jacket, L 1984, ch 421 at 8). Instead of applying New York law, the courts would conduct a conflicts analysis and apply the law of the jurisdiction with " 'the most significant relationship to the transaction and the parties' " (*Zurich Ins. Co. v Shearson Lehman Hutton*, 84 NY2d 309, 317 [1994] [quoting Restatement (Second) of Conflict of Laws § 188 (1)]). As a result, parties would be deterred from choosing the law of New York in their contracts, and the Legislature was concerned about how that would affect the standing of New York as a commercial and financial center (*see* Sponsor's Mem, Bill Jacket, L 1984, ch 421). The Sponsor's Memorandum states, "In order to encourage the parties of significant commercial, mercantile or financial contracts to choose New York law, it is important . . . that the parties be certain that their choice of law will not be rejected by a New York Court" (*id.* at 8). The Legislature desired for parties with multi-jurisdictional contacts to avail themselves of New York law if they so designate in their choice-of-law provisions, in order to eliminate uncertainty and to permit the parties to choose New York's "well-developed system of commercial jurisprudence" (*id.* at 7).

General Obligations Law § 5-1402 (1) further provides:

"any person may maintain an action or proceeding against a foreign corporation, non-resident, or foreign state where the action or proceeding arises out of or relates to any contract, agreement or undertaking for which a choice of New York law has been made in whole or in part pursuant to section 5-1401 and which (a) is a contract, agreement or undertaking, contingent or otherwise, in consideration of, or relating to any obligation arising out of a transaction covering in the aggregate, not less than one million dollars, and (b) which contains a provision or provisions whereby such foreign corporation or non-resident agrees to submit to the jurisdiction of the courts of this state."

Section 5-1402 (1) opened New York courts up to parties who lacked New York contacts but who had (1) engaged in a transaction involving $1 million or more, (2) agreed in their contract to submit to the jurisdiction of New York courts, and (3) chosen to apply New York law pursuant to General Obligations Law § 5-1401. The statutes read together permit parties to select New York law to govern their contractual relationship and to avail themselves of New York courts despite lacking New York contacts.

Applying General Obligations Law §§ 5-1401 and 5-1402 to the facts of the present case, we conclude that New York substantive law must govern, since the parties designated New York in their choice-of-law provision in the Guarantee and the transaction exceeded $250,000. IIC argues that the "whole" of New York law should apply, including New York's common-law conflict-of-laws principles. IIC maintains that the Guarantee's choice-of-law provision would have had to expressly exclude New York's conflict-of-laws principles in order for New York substantive law to apply; otherwise, IIC claims that the court must engage in a conflicts analysis that results in the application of Brazilian substantive law. IIC's argument is unpersuasive. Express contract language excluding New York's conflict-of-laws principles is not necessary. The plain language of General Obligations Law § 5-1401 dictates that New York substantive law applies when parties include an ordinary New York choice-of-law provision, such as appears in the Guarantee, in their contracts. The goal of General Obligations Law § 5-1401 was to promote and preserve New York's status as a com-

mercial center and to maintain predictability for the parties. To find here that courts must engage in a conflict-of-laws analysis despite the parties' plainly expressed desire to apply New York law would frustrate the Legislature's purpose of encouraging a predictable contractual choice of New York commercial law and, crucially, of eliminating uncertainty regarding the governing law.

The Restatement (Second) of Conflict of Laws supports our conclusion that an express exclusion of New York's conflict-of-laws rules is unnecessary. According to the Restatement (Second) of Conflict of Laws § 187 (3), "[i]n the absence of a contrary indication of intention, the reference [to the law of the state chosen by the parties] is to the local law of the state of the chosen law." "[L]ocal law" is defined as "the body of standards, principles and rules, *exclusive* of its rules of Conflict of Laws" (Restatement [Second] of Conflict of Laws § 4 [1] [emphasis added]). Under the Restatement (Second), the parties' decision to apply New York law to their contract results in the application of New York substantive law, not New York's conflicts principles.

It strains credulity that the parties would have chosen to leave the question of the applicable substantive law unanswered and would have desired a court to engage in a complicated conflict-of-laws analysis, delaying resolution of any dispute and increasing litigation expenses. We therefore conclude that parties are not required to expressly exclude New York conflict-of-laws principles in their choice-of-law provision in order to avail themselves of New York substantive law. Indeed, in the event parties wish to employ New York's conflict-of-laws principles to determine the applicable substantive law, they can expressly so designate in their contract.*

Accordingly, the order of the Appellate Division should be affirmed, with costs.

Judges CIPARICK, GRAFFEO, READ, SMITH and PIGOTT concur.

Order affirmed, with costs.

---

* For the foregoing reasons, we find the difference between the language of the choice-of-law provision in the Agreement and the Guarantee to be inconsequential as a matter of law.