14-1021-cv
Ministers & Missionaries v. Snow

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

_____

August Term, 2014

(Argued: January 12, 2015      Decided: March 5, 2015)

Docket No. 14-1021-cv

_____

THE MINISTERS AND MISSIONARIES BENEFIT BOARD,

*Interpleader-Plaintiff-Cross-Defendant-Appellee,*

—v.—

LEON SNOW, LEANN YOWELL SNOW,

*Interpleader-Defendants-Cross-Claimants-Appellants,*

—v.—

THE ESTATE OF CLARK FLESHER, MICHELE ARNOLDY, Individually & as Personal Representative of the Estate of Clark Flesher,

*Interpleader-Defendants-Appellees.*[*]

---

[*] The Clerk of Court is directed to amend the caption.

_____

Before:

        KATZMANN, *Chief Judge*, KEARSE and RAGGI, *Circuit Judges*.

_____

        Appeal from a final judgment entered on March 26, 2014, by the United States District Court for the Southern District of New York (Forrest, *Judge*) granting summary judgment for the Estate of Clark Flesher and Michele Arnoldy, and denying summary judgment for Leon and LeAnn Yowell Snow. Because we conclude that the case implicates threshold questions of New York State law that are unsettled, important, and determinative, we **CERTIFY** these questions to the New York Court of Appeals.

_____

        JESSE T. WILKINS (Gregory R. Preston, *on the brief*), Preston & Wilkins, LLC, Levittown, NY, *for Leon and LeAnn Yowell Snow*.

        BRIAN ROSNER, (Natalie A. Napierala, *on the brief*), Carlton Fields Jorden Burt, P.A., New York, NY, *for the Estate of Clark Flesher and Michele Arnoldy*.

_____

KATZMANN, *Chief Judge*:

        This case raises important, yet unanswered, questions of New York State law. Specifically, its resolution turns on whether a governing-law provision that states that the contract will be governed by and construed in accordance with the laws of the State of New York, in a contract not consummated pursuant to New

2

York General Obligations Law section 5-1401, requires the application of New York Estates, Powers & Trusts Law section 3-5.1(b)(2), a New York statute that may, in turn, require application of the law of another state. For the reasons discussed below, we conclude that this is a threshold issue that is determinative, unsettled, likely to recur, and has important public policy implications. *See Osterweil v. Bartlett*, 706 F.3d 139, 142 (2d Cir. 2013); *State Farm Mut. Auto. Ins. Co. v. Mallela*, 372 F.3d 500, 509 (2d Cir. 2004). Accordingly, we **CERTIFY** two questions concerning this issue to the New York Court of Appeals. *See* N.Y. Comp. Codes R. & Regs. tit. 22, § 500.27(a); 2d Cir. Local R. 27.2(a).

## BACKGROUND

Reverend Clark Flesher was a participant in two benefits plans administered by the plaintiff Ministers and Missionaries Benefit Board ("MMBB"), a New York not-for-profit corporation. Flesher entered into the MMBB plans before his divorce from his then-wife, LeAnn Flesher (now LeAnn Snow). Snow, also a reverend and MMBB policyholder, was listed as the primary beneficiary on both of Flesher's MMBB plans. Her father, Leon Snow, was listed as the contingent beneficiary on both plans. When Flesher and LeAnn Snow divorced in 2008 they signed a Marital Settlement Agreement in which each

3

agreed to relinquish all rights to inherit from the other. The Settlement Agreement also expressly permitted them to change the beneficiaries on their respective MMBB plans. Flesher, however, never exercised this option.

Flesher passed away on June 22, 2011. After his death, the two sets of interpleader defendants each claimed entitlement to the benefits of his MMBB plans (what the parties refer to as the "disputed funds"). MMBB was unable to determine how to distribute the disputed funds, and on December 23, 2011, commenced this action against the interpleader defendants: (1) the Estate and Flesher's sister, Michele Arnoldy, individually and as the personal representative of the Estate; and (2) LeAnn and Leon Snow. On September 25, 2012, the United States District Court for the Southern District of New York (Griesa, *J.*) granted interpleader relief to the plaintiff and discharged it from all liabilities as to the defendants, dismissed it from the action, and enjoined all other actions to recover any part of the disputed funds from proceeding until the court issued a final judgment resolving which party was entitled to the disputed funds. The case was transferred to Judge Forrest on June 6, 2013, and the parties each moved for summary judgment.

4

On their cross-motions for summary judgment, the district court held that the Estate of Clark Flesher is entitled to the disputed funds. *See Ministers & Missionaries Benefit Bd. v. Estate of Clark Flesher*, No. 11 Civ. 9495 (KBF), 2014 WL 1116846, at *6 (S.D.N.Y. Mar. 18, 2014). In reaching this conclusion, the district court reasoned that: (1) the parties agreed that "[t]he relevant choice-of-law rules are the rules of the forum state, here, New York," *id.* at *5 (internal quotation marks omitted); (2) the disputed funds constituted Flesher's personal property, and under New York Estates, Powers & Trusts Law section 3-5.1(b)(2), the "revocation or alteration of a testamentary disposition of personal property, and the manner in which such property devolves when not disposed of by will, are determined by the law of the jurisdiction in which the decedent was domiciled at death"; (3) Rev. Flesher was domiciled in the state of Colorado at his death; and (4) under Colorado's revocation law, Colo. Rev. Stat. § 15-11-804(2)(a)(i), the divorce terminated both Snows' claims to the disputed funds.[1] *See* 2014 WL 1116846, at *5–*6. New York's analogous revocation law prevents only an ex-

---

[1] Colorado's statute "[r]evokes any revocable . . . disposition or appointment of property made by a divorced individual to his or her former spouse in a governing instrument and any disposition or appointment created by law or in a governing instrument to a relative of the divorced individual's former spouse." Colo. Rev. Stat. § 15-11-804(2)(a)(i).

5

spouse from recovering a revocable disposition, but not an ex-spouse's family member. *See* N.Y. Est. Powers & Trusts Law § 5-1.4.

The Snows filed a timely appeal, and we review the district court's decision de novo. *Fieger v. Pitney Bowes Credit Corp.*, 251 F.3d 386, 393 (2d Cir. 2001). Before we can consider the district court's decision to award the disputed funds to the Estate, however, we must first consider a threshold issue with which the district court did not specifically grapple: whether the contracts' governing-law provisions require the application of New York Estates, Powers & Trusts Law section 3-5.1(b)(2), a New York statute that may require application of the law of another state.

The two MMBB contracts at issue in this case each include a governing law provision stating: "The provisions of this Plan shall be governed by and construed in accordance with the laws of the State of New York." J.A. 101; *see* J.A. 95. Yet it is unclear how these provisions should be interpreted. The provisions could be read to require a court to apply both New York substantive law and New York choice-of-law principles. They could also be read to require only the application of New York substantive law. Under the first reading, implicitly adopted by the district court, the governing-law provisions in the MMBB plan

6

contracts would have no effect on the outcome of the case. Because the case was brought in federal court in New York, New York substantive law and choice-of-law principles would apply even absent a governing law provision specifically directing the court to apply New York law. *See Fieger*, 251 F.3d at 393. Under the second reading, by contrast, the district court would apply only New York substantive law without reference to New York choice-of-law principles—what the Restatement (Second) of Conflict of Laws refers to as "local law," "the body of standards, principles and rules [of a state], *exclusive of its rules of Conflict of Laws*." Restatement (Second) of Conflict of Laws § 4(1) (1971) (emphasis added). There is also a third possible reading of the governing-law provisions; namely, that they preclude the application of New York common-law conflict-of-laws analysis, but not the application of a choice-of-law directive in a New York statute.

In a recent case, the New York Court of Appeals expressly approved the second reading, albeit in a statutory context not at issue in this case. *See IRB-Brasil Resseguros, S.A. v. Inepar Invs., S.A.*, 982 N.E.2d 609, 612 (N.Y. 2012). In that case, IRB-Brasil Resseguros, S.A. ("IRB") purchased $14 million in notes issued by Inepar Investments, S.A. ("Inepar"), a subsidiary of a Brazilian power

7

company. When interest payments and returns of its principal to IRB ceased, it sued Inepar in New York State court. *Id.* at 610. The underlying guarantee contract between the parties was consummated pursuant to New York General Obligations Law section 5-1401 ("Large Contract Statute"), a statute which expressly permits parties in contracts concerning amounts greater than $250,000 to select New York law as the governing law.[2] *Id.* at 611–12.

Because New York conflict-of-laws principles might have required the application of Brazilian rather than New York law, the New York Court of Appeals was faced with deciding "whether a conflict-of-laws analysis must be undertaken when there is an express choice of New York law in the contract

---

[2] The Court of Appeals opinion briefly surveyed the legislative history and purpose of the law:

> The Legislature passed the statute in 1984 in order to allow parties without New York contacts to choose New York law to govern their contracts. Prior to the enactment of section 5-1401, the Legislature feared that New York courts would not recognize "a choice of New York law [in certain contracts] on the ground that the particular contract had insufficient 'contact' or 'relationship' with New York." Instead of applying New York law, the courts would conduct a conflicts analysis and apply the law of the jurisdiction with "'the most significant relationship to the transaction and the parties.'" As a result, parties would be deterred from choosing the law of New York in their contracts, and the Legislature was concerned about how that would affect the standing of New York as a commercial and financial center.

*IRB-Brasil Resseguros, S.A*, 982 N.E.2d at 611 (brackets in original and internal citations omitted).

pursuant to General Obligations Law § 5-1401." *Id.* at 610. The Court of Appeals

concluded that it was not permitted to look to Brazilian law. It reasoned, first,

that "[t]he plain language of [the Large Contract Statute] dictates that New York

substantive law [alone] applies." *Id.* at 612. Moreover, it emphasized,

> [u]nder the Restatement (Second) [of Conflict of Laws] the parties' decision to apply New York law to their contract results in the application of New York substantive law, not New York's conflicts principles.

> It strains credulity that the parties would have chosen to leave the question of the applicable substantive law unanswered and would have desired a court to engage in a complicated conflict-of-laws analysis, delaying resolution of any dispute and increasing litigation expenses.

*Id.*

The key differences between *IRB-Brasil Resseguros* and this case are that (1)

the MMBB contracts were not consummated pursuant to the Large Contract

Statute, and (2) the MMBB contracts might implicate another New York statute,

New York Estates, Powers & Trusts Law section 3-5.1(b)(2). Accordingly, in

order to reach a conclusion in this case, we must first determine how the Court of

Appeals would interpret governing law provisions in non-Large Contract Statute

contracts, particularly in the context of New York Estates, Powers & Trusts Law

section 3-5.1(b)(2). *See Michalski v. Home Depot, Inc.*, 225 F.3d 113, 116 (2d Cir.

9

2000) ("Absent law from a state's highest court, a federal court sitting in diversity has to predict how the state court would resolve an ambiguity in state law.")

## DISCUSSION

Under Second Circuit Local Rule 27.2, we may certify questions of New York law to the New York Court of Appeals. *See* N.Y. Comp. Codes R. & Regs. tit. 22, § 500.27(a) ("Whenever it appears to . . . any United States Court of Appeals . . . that determinative questions of New York law are involved in a case pending before that court for which no controlling precedent of the [New York] Court of Appeals exists, the court may certify the dispositive questions of law to the Court of Appeals.") Our decision whether to certify such questions is discretionary. *See 10 Ellicott Square Court Corp. v. Mountain Valley Indem. Co.*, 634 F.3d 112, 125 (2d Cir. 2011). In this regard, our analysis is "principally guided by three factors." *Id.* They are: "(1) whether the New York Court of Appeals has addressed the issue and, if not, whether the decisions of other New York courts permit us to predict how the Court of Appeals would resolve it; (2) whether the question is of importance to the state and may require value judgments and public policy choices; and (3) whether the certified question is determinative of a claim before us." *Barenboim v. Starbucks Corp.*, 698 F.3d 104, 109 (2d Cir. 2012).

10

Applying this rubric to the present case, we conclude that two questions warrant certification to the New York Court of Appeals.

First, the New York Court of Appeals has not expressly considered the specific questions at issue in this case.[3] As we explained above, the New York Court of Appeals has considered similar questions in the context of contracts consummated pursuant to the Large Contract Statute in *IRB-Brasil Resseguros*. However, it is not clear from that decision whether the New York Court of Appeals would apply the same reasoning outside of that statutory context. There, the Court of Appeals relied not only on the general conflict-of-laws principles embodied in the Restatement (Second) of Conflict of Laws, but also on the specific legislative purpose of the Large Contract Statute. In addition, in that decision, the Court of Appeals rejected the application of common-law conflict-of-laws principles, whereas the contracts in this case may implicate a choice-of-

---

[3] The Appellate Division considered a somewhat similar question in *McCarthy v. Aetna Life Ins. Co.*, 231 A.D. 2d 211, 214, (N.Y. App. Div. 1997), *rev'd on other grounds*, 704 N.E.2d 557 (1998), and concluded, notwithstanding New York Estates, Powers & Trusts Law section 3-5.1(b)(2), that the governing-law provision required the application of Delaware law. *See id.* That case does not help us accurately predict how the Court of Appeals would interpret the contractual provisions in the case, however, because: (1) the Appellate Division's decisions are not binding on the Court of Appeals; (2) *McCarthy* predates *IRB-Brasil Resseguros*; (3) *McCarthy* does not squarely apply to the specific facts of the present case; and (4) in reaching its decision, the Court of Appeals stated that "it need not decide [the] question" of which state's law applied, *McCarthy*, 704 N.E.2d at 560.

law directive in a New York State statute. We therefore cannot confidently predict whether the New York Court of Appeals would apply the holding of *IRB-Brasil Resseguros* to the contracts at issue here. Moreover, if the New York Court of Appeals would apply the holding in *IRB-Brasil Resseguros* to these contracts, we are unaware of any New York Court of Appeals decision that dictates whether a person's entitlement to the proceeds of a death benefit or retirement plan constitutes "personal property . . . not disposed of by will" within the meaning of New York Estates, Powers & Trusts Law § 3-5.1(b)(2). Accordingly, this factor supports the certification of these sequential questions to the New York Court of Appeals. *See Osterweil*, 706 F.3d at 143.

Second, these questions are of great importance to New York State contract law and implicate significant issues of public policy. Many contracts select New York law as their governing law, and the New York legislature has decided that there is value in allowing parties to choose to do so. The State Legislature adopted the Large Contract Statute for just this reason. That said, it is not clear whether the legislators wanted to provide this opportunity for *all* contracts or whether the decision to require a $250,000 statutory threshold indicates their intention to treat contracts concerning lesser amounts differently.

Moreover, the questions are likely of great importance to the New York

Estates, Trusts & Powers Law as well. The New York legislature enacted a new

version of section 5-1.4 in 2008 to provide that a divorce automatically revokes

retirement and death benefit plan beneficiary designations in favor of an ex-

spouse, and the relationship between governing-law provisions in such plans

and section 3-5.1(b)(2) has yet to be addressed by the courts. Both plan

administrators and participants have significant interests in determining which

state's law applies to a beneficiary designation if a policyholder dies while

domiciled outside of New York. For example, while New York's revocation

statute applies only to an ex-spouse, several other states in addition to Colorado

have enacted statutes that revoke certain non-probate beneficiary designations of

an ex-spouse's relatives upon divorce. *See, e.g.*, N.J. Stat. Ann. § 3B:3-14(a); Mass.

Gen. Laws ch. 190B, § 2-804(b); Haw. Rev. Stat. § 560:2-804(b). Thus the issue of

whether another state's revocation statute applies may often be determinative

where the deceased has designated an ex-spouse's relative as a beneficiary.

Third, the answer to these questions could resolve this case. If the Court of

Appeals were to conclude that the governing-law provisions preclude the

application of New York Estates, Powers & Trusts Law section 3-5.1(b)(2) or that

13

section 3-5.1(b)(2) does not apply to the payment of proceeds under the MMBB

plans, that could have a decisive impact on which party would be awarded the

disputed funds.

For all of these reasons, we deem it appropriate to certify the following

questions to the New York Court of Appeals:

(1) Whether a governing-law provision that states that the contract will be governed by and construed in accordance with the laws of the State of New York, in a contract not consummated pursuant to New York General Obligations Law section 5-1401, requires the application of New York Estates, Powers & Trusts Law section 3-5.1(b)(2), a New York statute that may, in turn, require application of the law of another state?

(2) If so, whether a person's entitlement to proceeds under a death benefit or retirement plan, paid upon the death of the person making the designation, constitutes "personal property . . . not disposed of by will" within the meaning of New York Estates, Powers & Trusts Law section 3-5.1(b)(2)?

"Consistent with our usual practice, we do not intend to limit the scope of the

Court of Appeals' analysis through the formulation of our question[s], and we

invite the Court of Appeals to expand upon or alter [these] question[s] as it

should deem appropriate." *Nguyen v. Holder*, 743 F.3d 311, 317 (2d Cir. 2014)

(internal quotation marks omitted).

14

## CONCLUSION

It is hereby **ORDERED** that the Clerk of Court transmit to the Clerk of the New York Court of Appeals a Certificate in the form attached, together with a copy of this opinion and a complete set of the briefs, appendices, and record filed by the parties in this Court. This panel will retain jurisdiction to decide the case once we have had the benefit of the views of the New York Court of Appeals, or once that court declines certification. Finally, we order the interpleader defendants to bear equally any fees and costs that may be requested by the New York Court of Appeals.