OPINION OF THE COURT
Stein, J.
In IRB-Brasil Resseguros, S.A. v Inepar Invs., S.A. (20 NY3d 310 [2012], cert denied 569 US —, 133 S Ct 2396 [2013]), this Court held that, where parties include a New York choice-of-law clause in a contract, such a provision demonstrates the parties’ intent that courts not conduct a conflict-of-laws analysis (see id. at 312). We now extend that holding to contracts that do not fall under General Obligations Law § 5-1401, and clarify that this rule obviates the application of both common-law conflict-of-laws principles and statutory choice-of-law directives, unless the parties expressly indicate otherwise.
L
Plaintiff Ministers and Missionaries Benefit Board (MMBB) is a New York not-for-profit corporation, based in New York County, that administers a retirement plan and a death benefit plan for certain ministers and missionaries. Decedent Clark Flesher was a minister enrolled in both plans. He named his then-wife, defendant LeAnn Snow, as his primary beneficiary and her father, defendant Leon Snow, as the contingent beneficiary. Both plans state that they “shall be governed by and construed in accordance with the laws of the State of New York.”
Flesher and LeAnn Snow divorced in 2008. Flesher moved to Colorado in 2010 and died there in 2011. A Colorado court has apparently admitted his will to probate, naming his sister, de *469 fendant Michele Arnoldy, as personal representative of the estate. Despite the divorce, Flesher never changed his beneficiary designations under the MMBB plans. Because MMBB was unsure to whom the plan benefits should be paid after Flesher’s death, it commenced a federal interpleader action against Flesher’s Estate, Arnoldy (individually and as personal representative of the Estate), LeAnn Snow and Leon Snow.[1]
The United States District Court for the Southern District of New York (Griesa, J.) allowed MMBB to post a bond and be released from the case, with the obligation to pay the benefits as the court directs. Arnoldy and the Estate moved for summary judgment, and the Snows cross-moved for summary judgment. The District Court (Forrest, J.) denied the Snows’ motion, granted the motion of Arnoldy and the Estate and directed MMBB to pay the disputed funds to Arnoldy, as representative of the Estate (2014 WL 1116846, 2014 US Dist LEXIS 37822 [SD NY, Mar. 18, 2014, No. 11 Civ 9495(KBF)]). In making that determination, the District Court reasoned that: (1) the parties agreed that the relevant choice-of-law rules are the rules of New York, as the forum state; (2) the disputed funds constitute personal property; (3) under EPTL 3-5.1 (b) (2), revocation of a disposition of personal property, where such property is not disposed of by a will, is determined by the law of the state where the decedent was domiciled at the time of death; (4) Flesher was domiciled in Colorado at the time of his death, so Colorado law applied; and (5) Colorado’s revocation law terminated any claims to the plans by both Snows (i.e., the former spouse and her relatives) when Flesher and LeAnn Snow were divorced.
On the Snows’ appeal, the Second Circuit Court of Appeals determined that there were important and unanswered questions of New York law and, therefore, certified two questions to this Court before deciding the appeal (780 F3d 150 [2d Cir 2015]). Those questions are:
“(1) Whether a governing-law provision that states that the contract will be governed by and construed in accordance with the laws of the State of New York, in a contract not consummated pursuant to *470 New York General Obligations Law section 5-1401, requires the application of New York Estates, Powers & Trusts Law section 3-5.1(b)(2), a New York statute that may, in turn, require application of the law of another state?
“(2) If so, whether a person’s entitlement to proceeds under a death benefit or retirement plan, paid upon the death of the person making the designation, constitutes ‘personal property . . . not disposed of by will’ within the meaning of New York Estates, Powers & Trusts Law section 3-5.1(b)(2)?” (780 F3d at 155).
This Court accepted the certified questions (25 NY3d 935 [2015]). We now answer the first question in the negative and, accordingly, have no occasion to reach the second question.
IL
The retirement and death benefit plans here each state that they “shall be governed by and construed in accordance with the laws of the State of New York.” The first certified question essentially asks us how to interpret the phrase “laws of . . . New York” in those contractual provisions.
We begin with the basic premises that courts will generally enforce choice-of-law clauses and that contracts should be interpreted so as to effectuate the parties’ intent (see Welsbach Elec. Corp. v MasTec N. Am., Inc., 7 NY3d 624, 629 [2006]). In a case based on New York law, the United States Supreme Court held that a choice-of-law provision in a contract “may reasonably be read as merely a substitute for the conflict-of-laws analysis that otherwise would determine what law to apply to disputes arising out of the contractual relationship” (Mastrobuono v Shearson Lehman Hutton, Inc., 514 US 52, 59 [1995]). Thus, the parties here agree that, pursuant to the choice-of-law provisions in the MMBB plans, the contracts will be governed only by New York’s substantive law, not by New York’s common-law conflict-of-laws rules.
Nevertheless, we must decide whether the New York law to be applied includes a New York statutory choice-of-law directive, such as EPTL 3-5.1 (b) (2). That statute provides that “[t]he intrinsic validity, effect, revocation or alteration of a testamentary disposition of personal property, and the manner in which such property devolves when not disposed of by will, *471 are determined by the law of the jurisdiction in which the decedent was domiciled at death” (EPTL 3-5.1 [b] [2]).[2] The question is whether section 3-5.1 (b) (2) should be characterized as part of New York’s substantive or “local law,” which the contracting parties intended to apply, or whether it is simply a conflict-of-laws rule, which they did not intend to apply. The answer to this question is crucial here because the recipients of the MMBB plan benefits will be different depending on whether courts apply the law of New York or the law of Colorado.
As for indisputably substantive New York law, EPTL 5-1.4 (a) states that,
“[ejxcept as provided by the express terms of a governing instrument, a divorce . . . revokes any revocable (1) disposition or appointment of property made by a divorced individual to, or for the benefit of, the former spouse, including, but not limited to, a disposition or appointment by will, ... by beneficiary designation in a life insurance policy or (to the extent permitted by law) in a pension or retirement benefits plan.”
The plans here fall under the definition of governing instruments (see EPTL 5-1.4 [f] [5]). Thus, under New York’s purely substantive law, Flesher’s designation of LeAnn Snow as a beneficiary of the plans was revoked upon their divorce in 2008, while the designation of Leon Snow as contingent beneficiary remained in effect (see Matter of Lewis, 25 NY3d 456, 459 [2015]).
In contrast, the relevant Colorado statute provides that a divorce acts to revoke any dispositions or appointments by the divorced person to his or her former spouse and to relatives of the former spouse (see Colo Rev Stat § 15-11-804 [2]). Colorado courts have confirmed that the term “governing instruments” in that state’s revocation statute includes designations of beneficiaries in life insurance policies (see In re Estate of Johnson, 304 P3d 614, 616 [Colo App 2012], cert denied 2013 WL 3321113, 2013 Colo LEXIS 457 [July 1, 2013, No. 13SC46]). Because Leon Snow, as the father of LeAnn Snow, falls within the definition of a “[Relative of the divorced individual’s former *472 spouse” in relation to Flesher (Colo Rev Stat § 15-11-804 [1] [e]), under Colorado law, the divorce revoked the designations of both LeAnn Snow and Leon Snow as beneficiaries of the MMBB plans.
The Second Circuit concluded that this case presented a close question based, in part, on this Court’s recent decision in IRB-Brasil Resseguros, S.A. (20 NY3d 310). There, we decided that the need for a conflict-of-laws analysis is obviated by a contract, made pursuant to General Obligations Law § 5-1401, that contains a New York choice-of-law clause (see id. at 312). Section 5-1401 embodies the legislature’s desire to encourage parties to choose the New York justice system to govern their contractual disputes (see id. at 314-315). In IRB, we concluded that, where a contract met the requirements of General Obligations Law § 5-1401 — including that the transaction exceeded $250,000 and the parties designated New York law as controlling — “New York substantive law must govern” and “[ejxpress contract language excluding New York’s conflict-of-laws principles is not necessary” (id. at 315). We reasoned that, “[t]o find . . . that courts must engage in a conflict-of-laws analysis despite the parties’ plainly expressed desire to apply New York law would frustrate the Legislature’s purpose of encouraging a predictable contractual choice of New York commercial law and, crucially, of eliminating uncertainty regarding the governing law” (id. at 316). Significantly, this Court noted that the Restatement (Second) of Conflict of Laws § 187 (3) supports the same result (see IRB-Brasil Resseguros, S.A., 20 NY3d at 316). Section 187 (3) provides that, in the absence of an expressed contrary intention, references to the law of a state chosen by the parties means the “local law” of that state (see IRB-Brasil Resseguros, S.A., 20 NY3d at 316), which is defined elsewhere in the Restatement as the chosen state’s “body of standards, principles and rules, exclusive of its rules of Conflict of Laws, which the courts of that state apply in the decision of controversies brought before them” (Restatement [Second] of Conflict of Laws § 4 [1] [emphasis added]).[3]
Referring to New York’s overarching principle of providing certainty and finality to contracting parties, the Court in IRB concluded by saying that
*473 “[i]t strains credulity that the parties would have chosen to leave the question of the applicable substantive law unanswered and would have desired a court to engage in a complicated conflict-of-laws analysis, delaying resolution of any dispute and increasing litigation expenses. We therefore conclude that parties are not required to expressly exclude New York conflict-of-laws principles in their choice-of-law provision in order to avail themselves of New York substantive law. Indeed, in the event parties wish to employ New York’s conflict-of-laws principles to determine the applicable substantive law, they can expressly so designate in their contract” (IRB-Brasil Resseguros, S.A., 20 NY3d at 316).
Although IRB concerned only common-law conflict-of-laws principles, whereas EPTL 3-5.1 (b) (2) is a statutory choice-of-law directive, the latter is merely a codification of a longstanding common-law conflict-of-laws principle, eventually placed within the EPTL because it corresponds to that general area of law (see Matter of Gifford, 279 NY 470, 474-475 [1939]; Chamberlain v Chamberlain, 43 NY 424, 433 [1871]; Parsons v Lyman, 20 NY 103, 112 [1859]; Holmes v Remsen, 4 Johns Ch 460, 470 [NY 1820]; see also EPTL 3-5.1 [b], derived from former Decedent Estate Law § 47, derived from former Code of Civil Procedure § 2694; L 1966, ch 952). While the EPTL may have initially been created, at least in part, to revise the substance of New York estates law, the placement of section 3-5.1 (b) (2) within the EPTL primarily served another of its creators’ purposes, which was to organize the statutes addressing that area of the law and consolidate them into one source (see Governor’s Mem of Approval, Bill Jacket, L 1966, ch 952 at 91, 1966 NY Legis Ann at 363 [while noting that the bill enacting the EPTL and SCPA made numerous changes in substantive law, one of the “chief virtues” was the consolidation of statutes pertaining to estates law that were previously scattered throughout numerous other areas of law]; Mem of Temp Commn on Law of Estates, 1966 NY Legis Ann at 121 [the Commission made an effort to keep substantive changes to a minimum, worked to simplify the form of the statutes, and perhaps the most notable contribution the new EPTL makes is its format, compiling estates law in one source]). Although codification may be an indication that the legislature attaches *474 some importance to the rule, EPTL 3-5.1 (b) (2) nevertheless remains, in its essence, a conflict-of-laws rule, rather than a statement of substantive law. The fact that the legislature may have made a substantive decision to codify the rule, or had a substantive public policy reason for placing the former common-law rule within a statute, does not somehow elevate or transform this conflict-of-laws directive into a statement of substantive law.[4]
To be sure, our decision in IRB does not preclude a different result here. However, our conclusion in that case — that when parties include a choice-of-law provision in a contract, they intend application of only that state’s “substantive law” (IRB-Brasil Resseguros, S.A., 20 NY3d at 315) — is equally applicable to the contracts now before us. If New York’s common-law conflict-of-laws principles should not apply when the parties have chosen New York law to govern their dispute — a point on which all parties to this appeal agree — and EPTL 3-5.1 (b) (2) simply represents a common-law conflicts principle that has been codified into statute, that provision should not be considered in resolving this dispute.[5]
Stated differently, New York courts should not engage in any conflicts analysis where the parties include a choice-of-law provision in their contract, even if the contract is one that does not fall within General Obligations Law § 5-1401. That provi *475 sion applies only to contracts for transactions involving an aggregate of over $250,000, but it specifically states that “[n]othing contained [herein] shall be construed to limit or deny the enforcement of any provision respecting choice of law in any other contract” (General Obligations Law § 5-1401 [2]).[6] While IRB does not entirely answer the current question because that case does not address the applicability of a statutory choice-of-law directive, logic dictates that, by including a choice-of-law provision in their contracts, the parties intended for only New York substantive law to apply (see IRB-Brasil Resseguros, S.A., 20 NY3d at 315-316; see also Mastrobuono, 514 US at 63-64 [harmonizing choice-of-law provision and arbitration provision by reading the phrase “laws of the State of New York” to include New York substantive principles that courts would apply, but not include special rules limiting arbitrators’ authority]). A contrary interpretation is conceivable. However, we should apply the most reasonable interpretation of the contract language that effectuates the parties’ intended and expressed choice of law (see Welsbach Elec. Corp., 7 NY3d at 629). To do otherwise — by applying New York’s statutory conflict-of-laws principles, even if doing so results in the application of the substantive law of another state — would contravene the primary purpose of including a choice-of-law provision in a contract — namely, to avoid a conflict-of-laws analysis and its associated time and expense.[7] Such an interpretation would also interfere with, and ignore, the parties’ intent, contrary to the basic tenets of contract interpretation.
Moreover, allowing the application of a statutory choice-of-law directive would mean that the contracts here could be interpreted differently for each plan member, depending on where the member was domiciled at the time of his or her *476 death. It seems unlikely that MMBB intended to have its contracts — a retirement plan and a death benefit plan— interpreted in many different ways based on the whim and movements of its plan members. The intention to provide for predictable results regarding the distribution of funds to beneficiaries is particularly apt for these plans, which are issued to ministers and missionaries, who presumably are more likely than the general population to move often and who may live in all parts of the world, not just in different states. Contractually planning for the application of New York substantive law regarding benefit distribution would provide stability, certainty, predictability and convenience (see Restatement [Second] of Conflict of Laws § 187, Comment h), so that MMBB could easily determine who should receive plan benefits.[8]
Conversely, if application of the statutory choice-of-law directive — EPTL 3-5.1 (b) (2) — was required, it would be necessary for MMBB to keep abreast of the laws of all other states and nations to ensure that it paid the proper beneficiaries, which would invite the very uncertainties that MMBB and the plan members presumably intended to avoid. While it might appear to be a simple task to determine a decedent’s domicile at the time of his or her death, that will not always be the case. Therefore, we hold that, when parties include a choice-of-law provision in a contract, they intend that the law of the chosen state — and no other state — will be applied. In such a situation, the chosen state’s substantive law — but not its common-law conflict-of-laws principles or statutory choice-of-law directives — is to be applied, unless the parties expressly indicate otherwise.
*477 Accordingly, the first certified question should be answered in the negative and the second certified question not answered as academic.

. The complaint was filed in federal court based on diversity of the parties. MMBB is a New York corporation, the Estate is considered a resident of Colorado, Arnoldy resides in North Carolina, LeAnn Snow resides in California and Leon Snow resides in Minnesota.

. The District Court determined that Flesher was a Colorado domiciliary. While the Snows apparently continue to dispute Flesher’s domicile, that issue is not before us given the procedural posture of this case. Thus, for purposes of this appeal, we assume that Flesher was domiciled in Colorado at the time of his death.

. A state’s standards, principles and rules would be treated equally under that definition, regardless of whether they were expressed in the common law or in statutes.

. Thus, the fact that EPTL 3-5.1 (b) (2) is contained within EPTL article 3, which is entitled “[slubstantive [l]aw of [wlills,” is not determinative of its character. Due to the practicality of attempting to organize all of the statutory rules, by putting provisions that relate to one another together or in close proximity, portions of statutes may be placed in an article or section whose title — while correctly applying to that article or section in general— does not accurately reflect every individual provision therein. Nevertheless, a statutory provision that is, by its nature, procedural cannot be converted into substantive law by virtue of the title of the overall article including that particular provision (see Squadrito v Griebsch, 1 NY2d 471, 475 [1956] [text of statute takes precedence over title, which cannot alter or limit the language in the body of a statute itself); McKinney’s Cons Laws of NY, Book 1, Statutes § 123 [a]).

. The Restatement (Second) of Conflict of Laws § 6 (1) states that “[a] court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.” While that section articulates a general rule — a fairly basic and uncontroversial proposition — that courts must follow statutory directives, contracting parties are generally free to include provisions altering the application of certain state laws to disputes concerning their contract (see Welsbach Elec. Corp., 7 NY3d at 629). Thus, that section of the Restatement does not suggest that courts should apply a statutory choice-of-law directive when interpreting a contract containing a choice-of-law provision.

. It is unclear from the current record whether the amount due under either individual MMBB plan is more than $250,000. However, the combined benefits due under the two plans now exceed that amount. While the parties appear to acknowledge that General Obligations Law § 5-1401 does not apply to the MMBB plans, our decision here ensures that all contractual choice-of-law provisions are interpreted under the same rules, regardless of the amount at issue.

. The dissent takes issue with our conclusion regarding the ability of parties to waive application of EPTL 3-5.1 (b) (2) (see dissenting op at 489-490). To be clear, our analysis is not primarily based on that statute’s origins in the common law. Further, our holding narrowly addresses waiver based only on the nature of the statute — namely, a choice-of-law directive — as a natural extension of our holding in IRB.

. There is no reason to assume that the parties would expect that death benefits under the MMBB plans would be subject to the laws of the decedent’s domicile state simply because a majority of states follow that rule. To the contrary, the parties here reasonably could have believed that courts would apply the substantive law of New York — without resorting to any conflict-of-laws rules or the laws of any other state — based on the choice-of-law provisions in the contracts at issue. It was not necessary for the parties to explicitly waive the application of the domicile-based rule, or EPTL 3-5.1 (b) (2) itself, in the contracts. As we held in IRB, parties are not required to expressly exclude New York common-law conflict-of-laws principles in a contractual choice-of-law provision (see IRB-Brasil Resseguros, S.A., 20 NY3d at 316). That rule similarly applies to New York statutory choice-of-law directives.