Newmark Partners, L.P. v Hunt (2021 NY Slip Op 07065)





Newmark Partners, L.P. v Hunt


2021 NY Slip Op 07065


Decided on December 16, 2021


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: December 16, 2021

Before: Kapnick, J.P., Friedman, González, Rodriguez, Pitt, JJ. 


Index No. 653292/21 Appeal No. 14882 Case No. 2021-02806 

[*1]Newmark Partners, L.P. et al., Plaintiffs-Respondents,
v
Terrance David Hunt et al., Defendant-Appellants, CBRE, Inc., Defendant.


Gibson, Dunn & Crutcher LLP, New York (Theodore J. Boutrous, Jr. of counsel), for appellants.
David A. Paul, New York, for respondents.



Order, Supreme Court, New York County (Barry R. Ostrager, J.), entered July 12, 2021, which, insofar as appealed from, granted plaintiffs' motion for a preliminary injunction to the extent of enjoining defendants Terrance David Hunt, Christopher Stephen Cowan, and Shane Stanley Ozment for one year from providing brokerage services with any nexus to Colorado, directly or indirectly competing with plaintiffs in Colorado, or disparaging plaintiffs, unanimously affirmed, with costs.
Plaintiffs demonstrated a likelihood of success on the merits of their action to enforce a noncompetition provision. The noncompetition provision satisfies the requirements of Delaware law, which governs, per the choice of law provision in the governing agreement (see Ministers & Missionaries Benefit Bd. v Snow, 26 NY3d 466, 474 [2015]). The provision is "reasonable in geographic scope and temporal duration," "advance[s] a legitimate economic interest" of plaintiffs, and "survive[s] a balancing of the equities" (FP UC Holdings, LLC v Hamilton, 2020 WL 1492783, *6, 2020 Del Ch LEXIS 110, *14 [Del Ch Mar. 27, 2020] [internal quotation marks omitted]).
Whether or not the originally contemplated nationwide scope would have been reasonable, the narrowed geographic scope imposed by the motion court is reasonable — and defendants do not argue otherwise (see generally O'Leary v Telecom Resources Serv., LLC, 2011 WL 379300,*5, 2011 Del Super LEXIS 36, *13 [Del Super Ct, Jan. 14, 2011]).
The two-year temporal duration, which was further reduced by the motion court to one year, is also reasonable (see Weichert Co. of Pa. v Young, 2007 WL 4372823, *3, 2007 Del Ch LEXIS 170, *11-12 [Del Ch, Dec. 7, 2007]; All Pro Maids, Inc. v Layton, 2004 WL 1878784, *5 n 23, 2004 Del Ch LEXIS 116, *18 n 23 [Del Ch, Aug. 9, 2004], affd 880 A2d 1047 [Del 2005]; O'Leary, 2011 WL 379300 at *5, 2011 Del Super LEXIS 36 at *12-13) — notwithstanding that it did not begin to run until defendants left plaintiffs' employ (see Hough Assoc., Inc. v Hill, 2007 WL 148751, *6, *14-15, 2007 Del Ch LEXIS 5, *18, *47-53 [Del Ch, Jan. 17, 2007]).
The noncompetition provision also advances a legitimate economic interest of plaintiffs, i.e., protection of the business's goodwill (see Kan Di Ki, LLC v Suer, 2015 WL 4503210, *20, 2015 Del Ch LEXIS 191, *71-72 [Del Ch, July 22, 2015]; Hough, 2007 WL 148751 at *14, 2007 Del Ch LEXIS 5 at *50-52; All Pro, 2004 WL 1878784 at *5, 2004 Del Ch LEXIS 116 at *18-19). The fact that plaintiffs enjoyed the benefits of the goodwill stemming from defendants' continued employment for 6½ years after the purchase of their former company does not mean that plaintiffs did not have a continued legitimate economic interest in protecting that goodwill upon defendants' subsequent departure.
Plaintiffs also demonstrated that they will suffer irreparable harm absent an injunction in the form of loss of goodwill, reputation, and client relationships and client transfer to their primary competitor[*2]. Indeed, irreparable harm is presumed from the breach of a noncompetition provision intended to protect the purchase of a business and accompanying goodwill (see Manhattan Real Estate Equities Group LLC v Pine Equity, NY, Inc., 16 AD3d 292 [1st Dept 2005]).
The balance of equities also favors an injunction. Plaintiffs seek to protect their client relationships, reputation, and goodwill after losing all or almost all of their multifamily property group to their primary competitor. The fact that this group represents only a small portion of plaintiffs' total business is immaterial; it clearly has some value, and plaintiffs are entitled to protect that value (see Newell Rubbermaid Inc. v Storm, 2014 WL 1266827, *10, 2014 Del Ch LEXIS 45, *35-36 [Del Ch, Mar. 27, 2014]).
Plaintiffs are also the nonbreaching party. Even if defendants did not solicit clients or misappropriate confidential information, there is evidence that they induced other employees to leave with them, in violation of their nonsolicitation obligations, and it is clear that they left plaintiffs' employ to join a competitor in knowing disregard of their noncompetition obligations and advertised their move in violation of their obligations not to promote a competing business (see Hough, 2007 WL 148751 at *19, 2007 Del Ch LEXIS 5 at *69).
It is true that the potential losses to defendants from an injunction are significant: they will be forced to pause their careers for a year, with possible long-lasting impacts on their career development. However, defendants were able to take steps to mitigate at least the resulting financial hardships, by, among other things, negotiating signing bonuses, loans, and temporary, noncompeting positions at their new firm. They were also aware of the risks when they made the conscious decision to leave plaintiffs' employ for a competing firm in violation of the noncompetition provision (see Hough, 2007 WL 148751 at *19, 2007 Del Ch LEXIS 5 at *69).
Moreover, defendants were well compensated in connection with the sale of their interests in their prior company that resulted in these restrictions on their employment — even if part of this compensation reflected incentive payments (see UAH-Mayfair Mgt. Group LLC v Clark, 177 AD3d 572 [1st Dept 2019]; FP UC, 2020 WL 1492783 at *6, 2020 Del Ch LEXIS 110 at *14-15). That reality is not negated by the facts that defendants have already generated a lot of revenue for plaintiffs and that plaintiffs have used their departures as an opportunity to retain earned equity and commissions that defendants would otherwise have received.
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: December 16, 2021