M. E. CADE v. H. P. DAVIS, Ext'r of WM. CADE.

*Trusts—Statute of Frauds—Husband and Wife—Evidence—§590.*

1. While trusts, unless annexed as an incident to a conveyance of the legal estate, cannot be raised by parol even when founded on a valuable consideration, they may be attached by agreement to such transferred estate and will be enforced.

2. Where an agreement is made between husband and wife, that the proceeds of a sale of the wife's land shall be invested in other land in the name of the wife, such agreement is within the provisions of the statute of frauds, and cannot be specifically enforced, but relief will be given the wife by declaring her to be entitled to the proceeds of her land, and *perhaps* to charge the land purchased with her money, with its payment.

3. Where a parol contract for the sale of land upon which money has been paid, is repudiated, the vendor is required to return the money, for he will not be allowed to retain both the money and the land.

4. Where a husband contracts with his wife to invest money received from a sale of her land, in other land, the title to which is to be taken to the wife, but instead he takes the title to himself, he must either execute his contract by conveying the land to his wife, or restore to her the money which he received from her estate.

5. Where the answer admits the purchase of land, it is unnecessary to produce the deed, and a witness may testify to circumstances attending the transaction, that are not in the deed, although he refers collaterally to the deed.

6. The fact of payment to a deceased person, for land purchased of him, can be proved, when neither the witness nor the estate of the deceased vendor are interested in the result of the action.

7. The succession to personal property is governed exclusively by the law of the actual domicile of the intestate at the time of his death.

8. The common law is presumed to exist in other States, unless it is shown to have been changed by statute.

(*Smith* v. *Smith*, Winst. Eq., 30; *Dula* v. *Young*, 70 N. C., 450; *Carrington* v. *Allen*, 87 N. C., 354; *Gray* v. *Cooper*, 65 N. C., 183; *Lockhart* v. *Bell*, 90 N. C., 499; *McLean* v. *Daniel*, 3 Jones Eq., 394; cited and approved).

CIVIL ACTION, tried before *Boykin, Judge,* and a jury, at May Term, 1886, of CUMBERLAND Superior Court.

The defendant appealed.

The facts fully appear in the opinion.

*Messrs. N. W. Ray* and *Thos. H. Sutton,* for the plaintiff.
*Mr. W. A. Guthrie,* for the defendant.

SMITH, C. J.   William Cade, the defendant's testator, in 1862 intermarried with the plaintiff at the residence of her father, J. C. Cunningham, in South Carolina, and she returned with him to his home in Cumberland, in this State, where they remained until soon after the army under Gen. Sherman invaded that section, when they removed to and occupied the house and farm of said Cunningham, under a contract of renting by him to her husband.   Cunningham died in June, 1868, shortly after which the testator and his wife came back to their home in Cumberland.

While living in this State, a considerable sum of the personal estate, which the jury find to be $785, and to have been received some time in 1868, came into the testator's hands, besides which were paid him on November 29th, 1879, $2,900.00, by one J. C. Cottingham, for a tract of land lying in South Carolina, and which descended to the plaintiff, and were by her husband and herself sold and conveyed to him.   The complaint alleges that this fund was received by the testator, and the jury so find, under a parol agree-

ment or understanding that he would secure the money so received to her. No part of this money has been paid or secured to the plaintiff, and as much as was needed was applied to the satisfaction of a mortgage on the testator's land in Cumberland on a debt of which the principal money was $2,300.00, due to J. D. Williams.

The answer, besides controverting the essential allegations made by the plaintiff, and upon which her equity to a provision out of the testator's estate, adequate to her full re-imbursement, depends, as an offset to the demand, alleges that he paid a large amount of liabilities of the deceased to creditors, and for repairs and taxes, as well as charges which properly fall on the plaintiff's separate estate, if such she has. The jury find upon an issue, that the deceased paid out $1,750.00 of his own money in relief and exoneration of the plaintiff's estate.

These are the results developed at the trial and determined by the verdict. We now propose to enter upon an examination of the exceptions taken during the progress of the trial before the jury.

I. The defendant objected to the admission of any evidence not in writing and bearing the signature of the testator or of his agent, to prove the alleged contract. The objection was overruled, and the testimony heard and exception to the ruling entered.

While trusts, unless annexed as incident to a conveyance of the legal estate, cannot be raised by parol, even when founded on a valuable consideration, they may be attached by a contemporary agreement to such transferred estate, and will be enforced. If the agreement had been that the fund should be invested in the purchase of other land in place of that surrendered by the plaintiff on such condition, a specific performance would not be coerced, because, being to secure an interest in land and unwritten, it would come under the operation of the statute of frauds. It was so expressly

held in *Smith* v. *Smith*, Winst. Eq., 30; and relief was given by declaring the wife to be entitled to the proceeds of the sale of her land sold in consequence of the contract, out of his estate, and perhaps to hold the land purchased with the money as security to her, had this been found necessary.   To refuse all redress, would have been to enable the husband thus to acquire the property of his wife, and then repudiate the contract by which alone it was obtained, and practice a successful fraud upon her.   As in other cases of a parol contract for the sale of land upon which money has been paid in the expectation of securing title, if the vendor repudiates the obligation because the contract is not in writing, he is required to return the money, for he will not be allowed to retain both, so must the husband who thus obtains the property of his wife, under a contract recognized in equity, execute his agreement, or restore what he has obtained under it

In *Dula* v. *Young*, 70 N. C., 450 ; a case which seems to have been relied on to sustain the ruling, but is not similar in all respects, the husband and wife entered into an agreement by which her land was to be sold, and the proceeds of sale used in the purchase of a specific tract known as the Elk Farm. Her land was conveyed, and the farm bought, but title thereto taken by the husband in his own name   Both died leaving children, their common heirs, to whom the legal estate of the father, and the equitable estate of the mother descended, thus merging into one.   The Court decided that what the husband ought to have done, had been accomplished by operation of law, and the heirs had acquired an absolute estate, not liable for the debts of their father, and no order for specific performance was necessary.

In the present case, there was no undertaking to do what would have been required to be put in writing, but in general terms to secure the fund and repay it, a very vague amount it must be admitted, and to enable his estate to receive this accession from hers, and then escape the condi-

tions of the acquisition, would amount to a fraud, whether so intended or not, which a Court of Equity will not tolerate, and against which it will give redress.

This exception, lying at the root of the case, must therefore be overruled.

II. The defendant objected to so much of the testimony of J. C. Cottingham, contained in his deposition, as relates to his purchase of the plaintiff's land, and to whom he made payment, upon several grounds:   (1). For that the transaction is contained in a deed of which itself is the best evidence; (2). For that in proving payment, he was testifying to a transaction with a deceased person; and (3). Because it was an attempt to prove title by parol.

None of these grounds of objection are tenable.   The answer admits the conveyance of the land lying in South Carolina to the witness, and the production of the deed was unnecessary.   The testimony is essentially of the circumstances attending the transaction, that are not in the deed, and the deed is referred to only collaterally.   *Carrington* v. *Allen,* 87 N. C., 354, and cases cited.

2. The statement that the witness on examining the records found that the land had been devised by her father to the plaintiff, was but to satisfy his own mind as to the title There seems to have been no controversy upon this point, and it was a collateral inquiry.

3. The fact of payment to a deceased person for land bought of him, does not render the testimony incompetent under the interdict of *The Code,* §590.   The witness has no interest in the result of this controversy, nor is the estate of the deceased from whom the land is derived interested in the action, or in the manner of its determination.

III. Similar objections were made to the testimony of J. D. Williams, in reference to the mortgage and its discharge, and to that of the plaintiff that the land sold by herself and

husband, was all that her father owned in South Carolina,. and they are met by a like answer.

IV. The defendant opposed any proof from the plaintiff,. that her husband had possession of cattle, mules and horses of her father's estate and disposed of them for his own use.

The admission of this evidence is warranted by the ruling in *Gray* v. *Cooper*, 65 N. C., 183; and *Lockhart* v. *Bell*, 90 N. C., 499.

V. To sustain the impeached credit of a witness of the plaintiff who testified to a conversation with the testator about moneys received from the plaintiff's estate, he was asked and allowed to state the confidential relations exist- ing between them. This was to show the credit and confi- dence reposed in the witness, and while very feeble in effect,. we see no objection to the admission of the evidence.

The other exceptions to evidence are abandoned, and we proceed to consider those referable to the charge given to the jury.

The defendant asked for the following instructions:

"1. That as the marriage of the plaintiff with defendant's. testator took place in South Carolina in the year 1862, and the property in controversy came to the plaintiff in South Carolina, then as a matter of law the rights of the parties. would be determined by the law of South Carolina and not by the law of North Carolina.

"2. In the absence of proof to the contrary, the rules of the common law relative to marriage and the rights of prop- erty thereunder, are presumed to prevail in the States of the Union.

"3. That by the common law, the defendant's testator was tenant by the courtesy in his wife's lands if she owned any, in South Carolina, and would not be chargeable with the rents thereof, and he would be entitled in his own right to any cattle or other personal property which she had at the time of marriage or might acquire after marriage.

"4. That the plaintiff, having set out in her complaint that her land and personal property were sold by the defendant's testator in pursuance of a contract by which he was to repay her the money realized from the same, or to settle upon her other property of equal value, she must prove by a preponderance of the testimony, that there was such a contract, and the terms of the same, before she can recover anything in this action.

"5. That if the jury shall be satisfied that there was such a contract, then the plaintiff must show : 1st. That the defendant's testator received actual money, and how much money, by sales of the plaintiff's property, and not drafts or other evidences of debt. 2d. That after the actual money so received by him, he misapplied the same, and how much, to his own use, and did not use the same for the support of himself and wife. 3d. That the burden is on the plaintiff to show the same.

"6. That by law, the husband is the agent of his wife, and any sales made by him of her personal property are presumed to be made with her consent, unless the contrary is made to appear by her.

"7. That as the marriage of plaintiff with defendant's testator took place in 1862, no contract between them as to her separate estate was valid, unless made in writing and in accordance with §1835 of *The Code*.

"8. That the plaintiff has introduced no evidence of a written contract, and no evidence tending to prove a verbal contract by which the defendant's testator promised to repay her for money received by him from sales of her separate property, or to settle upon her other property of equal value.

"9. That this is not an action wherein the plaintiff seeks to recover of the defendant the value of property wrongfully converted by his testator, but is an action founded on contract, and the plaintiff must stand or fall upon the contract

alleged in her complaint, which she must establish to the satisfaction of the jury by a preponderance of proof.

"10. That the admissions, if any, made by defendant's testator to plaintiff's witnesses, as testified to by them, do not in law amount to an estoppel, nor relieve the plaintiff of the necessity of proving by competent testimony, her title as set forth in her complaint, to the separate property claimed by her."

It is stated in preface to these instructions, that they were refused by the Court, but in the case on appeal, bearing the signature of the Judge, it is differently represented, thus:

"The Court gave the 1st and 2d instructions asked for by defendant, adding, however, that the jury must consider all the evidence in regard to the domicile of the parties, and that if they should find from the evidence that the plaintiff and defendant's testator had their domicile in South Carolina at the time when the property was received, then the rule of common law would prevail; but if, on the other hand, the domicile was in North Carolina at the time when the property was received, then the law of North Carolina would govern.

"The Court refused to charge that there was courtesy, because the evidence was that there had been no child by the marriage, and the wife had outlived the husband.

"The 4th instruction asked by defendant was modified by the Court.

"That 1st prayer under instructions No. 5 was refused; 2d was substantially given, and so was the 3d in so far as it related to the 2d.

"The Court refused to charge that a written contract to repay was necessary. The plaintiff had not introduced any evidence of a written contract between her and her husband.

"The 10th instruction asked by defendant was given. The other instructions asked by defendant were refused.

" The instructions asked by defendant during argument were in effect given, because the jury were told that they could not give plaintiff any rent money at all.

" The other instructions asked by defendant were refused."

The substance of the ruling of the Court upon the points presented in the defence is, that the title to the personalty received by the defendant's testator, depended upon the domicile of the plaintiff and her husband at the time when it was received by him, and was not, in the event of their having returned to that State, by the law of South Carolina, while the rents received were the testator's own property.

Now, we do not so understand the rule of law governing the succession to the personal estate of an intestate. " The universal doctrine now recognized by the common law, although formerly much contested," in the language of STORY, J., " is that the succession to personal property is governed exclusively by the law of the *actual domicile of the intestate* at the time of his death." This is supported by a long array of cases referred to in the foot note; Story's Conflict of Laws, §481. At the common law, which is presumed to be in force when not shown to have been changed by statute, (and so the jury were instructed,) the personal property, as soon as surrendered by the representative to the plaintiff, would *eo instanti* vest in her husband. Both were residing in South Carolina when the father of the plaintiff died, and their respective rights were then fixed, and it would be a strange result if, when surrendered by the personal representative in that State, under its laws the title to the descended goods should be divested out of the owner and transferred by virtue of our laws, so as to constitute the separate estate of the wife. The only authority looking in the direction of giving support to such a proposition and to which our attention has been called, is found in *McLean* v. *Daniel*, 3 Jones Eq., 394. But upon examination of the case, it will be found not to sustain the contention. The facts are these:

Mrs. Glass resided in the State of Mississippi, and dying intestate, left a slave, which under its laws became the separate estate of her daughter, Elizabeth R. McLean, who with her husband, were married, and had ever since the marriage, resided in this State. The slave was delivered to her husband in that State, and was brought by him into this. The decision was, that as soon as the slave was delivered to the husband for his wife, and brought under the operation of our laws, the property vested in the husband *jure mariti,* because by our law, whatever personal goods of this kind came to the wife, passed to the husband unfettered by the foreign law which undertook to secure it to her separate use, the extra-territorial force of which was not recognized here. But here the property has vested in the husband, and his retention was not repugnant to our law, and hence, however acquired, if lawfully acquired elsewhere, it must remain in him undisturbed.

The question, however determined, does not, in our view, affect the result of the action, for whether hers or his, it comes from an estate, the indebtedness of which he has discharged to the amount of $1,750.00, and must lessen *pro tanto* this counter-demand. As the value of the goods thus appropriated to his own use is found by the jury to be $785, its deduction from the sum expended, leaves a residue of $965, by which the proceeds of the sale of land are to be abated. So the claim for rents is disallowed rightfully, and these items, the proceeds of the land, the value of the converted personal estate, and the rents, one and all demanded in the complaint. The amount, then, for which the testator's estate is chargeable, ascertained by the verdict, will be reached by applying the excess of expenditures made by the testator over the value of the personalty received, to-wit, $965 from $2,900, in reduction of this latter sum to $1,935, with interest thereon from November 29th, 1879. For this sum the testator's estate is to be charged, and if

necessary, and the land redeemed from the mortgage remains, and there are no *bona fide* liens or rights of purchasers to be affected, the plaintiff will be subrogated in respect thereto, to the rights of the mortgagee.

Thus modified, the judgment is affirmed.

Modified.                                                    Affirmed.