## W. H. GOOCH v. G. H. FAUCETT.

(Decided March 22, 1898).

*Action on Note—Wagering Contract—Illegal Consideration—Conflict of Laws—Statute Laws of Another State—Comity between States.*

1. What is the statute law of another State is a question of fact to be proved like any other fact.

2. In the absence of proof to the contrary, it will be presumed that, in a State once under the jurisdiction of England, the common law still prevails.

3. Comity between States, as to the recognition of the laws of one by

GOOCH ν. FAUCETT.

another, is the voluntary act of the State offering it, but it is inadmisible when contrary to its policy or prejudicial to its interests.

4. A note given in consideration of a bet won on a horse race cannot be enforced in this State (Sections 2841 and 2842 of *The Code*), although given in a State where wagering contracts are not invalid.

CIVIL ACTION tried at April Term, 1897, of GRANVILLE Superior Court before *Allen, J.*, and a jury, on appeal from judgment of a Justice of the Peace. There was a verdict followed by judgment for the defendant and plaintiff appealed. The facts are stated in the opinion.

*Messrs. Edwards & Royster*, for plaintiff (appellant).
*Mr. A. A. Hicks*, for defendant.

FAIRCLOTH, C. J.: C. H. Morton and defendant agreed to have a horse race and it was also agreed that the winner should have the other's horse. The race was run and Morton was the winner, and they valued defendant's horse at $100 and instead of delivering the horse he gave his note to Morton for $100. All this occurred in the State of Virginia. Subsequently the defendant renewed said note for principal and interest and gave the note sued on, which was assigned to plaintiff after maturity. The renewal took place in North Carolina. Without deciding whether the renewal was a North Carolina contract we will treat it as a Virginia contract according to plaintiff's contention.

The defendant pleads and relies upon *The Code*, Section 2841, 2842. These Sections declare that all wagers, bets or stakes, depending upon any race, lot or chance, etc., shall be unlawful, and all contracts, etc., on account of money or property, so wagered, bet or staked, shall be void.

It does not appear whether there is any statute in Virginia denouncing betting on races as illegal. The

statute law of another State is a question of fact to be proved like any other fact. In the absence of such proof, in those States, once under the jurisdiction of England, from which they severed their connection, it is presumed that the common law prevails. *Griffin* v. *Carter*, 40 N. C., 413; *Cade* v. *Davis*, 96 N. C., 139. This presumption arises from the rules of comity among the States. This is not a right of either State but is permitted and accepted by the States from mutual interest and convenience, from a sense of the inconvenience which would otherwise result, and from a moral necessity to do justice in order that justice may be done in return. Without this rule the law of one State can have no force in another. But there is no comity among the Courts of different States. They administer the law in the same way and by the same reasoning by which all other principles of the municipal law are ascertained and guided. It is the duty of every State to look to the interest of its own subjects. Comity, being voluntary and not obligatory, cannot supersede all discretion on the subject. Vattel at p. 61 says, "It belongs exclusively to each nation (State) to form its own judgment of what it prescribes to it—what is proper or improper for it to do, and it will examine and determine what it can do for another without neglecting the duty which it owes to itself." No State can demand the recognition of its laws in another, if they are deemed by the latter to be impolitic or unjust, of bad morals, or injurious to the rights and interests of its citizens, or against its public policy.

In *Bank of Augusta* v. *Earle*, 13 Pet. 519, 589, Chief Justice Taney said: "The Courts of justice have always expounded and executed them (contracts) according to the laws of the place in which they were made,

*provided* that law was not repugnant to the laws or policy of their own country. The comity thus extended to other nations is no impeachment of sovereignty. It is the voluntary act of the nation by which it is offered, and is inadmissible when contrary to its policy or prejudicial to its interests."

Story on Conflict of Laws, p. 35, Section 38, says: "In the silence of any positive rule . . . Courts of justice presume the tacit adoption of them (foreign laws) by their own government, unless they are *repugnant* to its policy or prejudicial to its own interest."

Many other authorities to the same effect might be cited. *Thrasher* v. *Everhart*, 3 Gill Johnson Md., 244; *Pope* v. *Horke*, 155 Ill., 617.

There is a difference between the right and the remedy. The Courts will look to the *lex loci contractus*, to construe the contract but will not look there for the remedy. Bishop on Contracts, Section 1371 (Enlarged Ed.)

We are now to the question whether gaming, betting on horse races, etc., are contrary to public policy and injurious to the interests of the citizens of the State. If so, as we have said above, it is not obligatory on the State to recognize, nor the duty of the Courts to enforce such forbidden contracts. The statute (*Code*, Section 2841) having existed in force nearly a century, affords pregnant proof that our Legislature and people have considered that the acts prohibited would be dangerous to the public policy and interest of the State. "The vice aimed at is not only injurious to the person who games, but wastes his property to the injury of those dependent on him, or who are to succeed to him. It has its more public aspect, for if it be announced

that a trustee has been false to his trust, or a public officer has embezzled public funds, by common consent the first inquiry is whether the defaulter has been wasting his property in gambling." *Flagg* v. *Baldwin*, 38 N. J., Eq. Rep., 219. The habit of gaming and betting is very seductive and when indulged in seems to seriously disturb the reason and prudence of the actors. We know as public information, that many dealers in speculative stocks depending on future contingencies have found rest in insane asylums, leaving helpless families behind to be cared for by the State. In the case before us the charm for betting induced the defendant to give his note expressly "without offset," and without the "benefit of exemptions." We do not feel it to be our duty to enforce contracts fraught with such consequences and expressly forbidden by our own State law and policy, in deference to the presumed law of the *lex loci*, recognizing such contracts as valid. By the the common law contracts of wager were not considered objectionable. When, however, the subject tended to encourage acts contrary to sound morals, the Courts refused to enforce such contract. *Gilber* v. *Sykes*, 16 East, 150. And when the act was against public policy or public duty the Court withheld its hand. *Atherford* v. *Beard*, 2 T. R., 610.

The case of *Flagg* v. *Baldwin*, *supra*, is one in point.

The contract for speculation in stocks upon margins was executed in the State of New York where it was presumed to be lawful and enforcible, and it was sought to be enforced in the Courts of the State of New Jersey. The statute in the latter State is in substance and almost *verbatim* the same as ours. The subject is thoroughly and ably considered in the opinion and it was held that such contracts could not be enforced in New Jersey,

because it would violate the plain public policy of the State on the subject of gambling and betting, and the Court said: "In this respect, such contracts are excepted from the rule of comity which requires the enforcement by the Courts of one State of contracts made in another, if valid by the *lex loci contractus.*" Such contracts as we have before us are unlawful and void, and are beyond the protection of law or the right of appeal to Courts of justice. This Court respects the usury laws of other States, but there is no likeness between our statutes forbidding usury and gaming, betting, etc. The former only affects the individual, for his benefit and protection, and the statute does not avoid the contract but only forfeits the interest.

We have examined the case of *Scott* v. *Duffy*, 14 Pa. St. Rep. 18, and find it does not apply here. The defendant in error loaned the plaintiff money in Jersey to bet on an election and he recovered it in a Pennsylvania Court. The Court said the loan did not arise out of the bet or any bet, nor to carry any specific bet into execution. The loan was independent of and before any bet was made. The lender neither played nor bet. Honor and good faith required that it should be repaid, and it did not appear that any statute in either State prevented it.                                            Affirmed.

CLARK, J., concurring: The note sued on was executed in this State. It was given in renewal of one executed in Virginia the consideration of which was a bet lost upon a horse race. It is held that against a judgment upon a note given since 1868, in renewal of one executed before that date, the debtor is entitled to claim his homestead. *Wilson* v. *Patton*, 87 N. C., 318; *Arnold* v. *Estis*, 92 N. C., 162. These are cited and the

reason given for them in *Blanton* v. *Commissioners*, 101 N. C., 532, "because the creditor must enforce the contract sued on with the incidents attaching to it when it was made, under the then existing laws," i. e. laws existing at the time of the renewal. The same rule is applicable as to laws existing at the place of renewal. The first note was only evidence of the original contract, the new note is given in this State, but upon the original consideration, (*Hyman* v. *Devereux*, 63 N. C., 624) and when the attempt is made to enforce such new contract in our Courts, we are confronted with *The Code*, Section 2841, which provides that all debts and wagers are unlawful and all contracts on account of any money so bet or wagered are void. Of course no action can be maintained upon a contract whose consideration makes it void.