John E. Parauda and GRETCHEN WALSH, Plaintiffs,

against
Encompass Insurance Company Of America, Defendant.


61128/15

John Parauda and Gretchen Walsh, pro se
Hurwitz & Fine, PC, by Steven Peiper for defendant


Stephen A. Bucaria, J.

The following papers read on this motion:
Notice of Motion XX
Affirmation in Support XX
Memorandum in Opposition X
Memorandum in Support XX
Motion by defendant Encompass Insurance Company of America for summary judgment dismissing the complaint is denied. Upon searching the record, summary judgment is granted to plaintiffs to the extent of declaring that the loss is covered by the policy. Cross-motion by plaintiffs John Parauda and Gretchen Walsh for sanctions for spoliation of evidence is denied.
This is an action on a homeowner's insurance policy. Plaintiffs John Parauda and Gretchen Walsh own a home located at 61 Nannahagan Road in Pleasantville, NY, which they occupy as their residence. The house is a three-story Tudor-style structure, with a brick facade [*2]covering the entire first floor, and stucco and wood trim finish covering the second and third floors. The house was constructed around 1929. Defendant Encompass Insurance Company of America issued a "Deluxe" policy covering the home, as well as plaintiffs' vehicles, which has been in force since July 1998. Under "additional property coverages," the policy covers property damage to the premises for "collapse" of the building or "any part" of the building caused by "hidden decay of the structure" (Dkt 58 at 9.)
Although "collapse" is not defined in the definition section of the policy, an amendment to the policy defines "collapse" as "an abrupt falling down or caving in of a building or any part of a building with the result that the building cannot be occupied for its current intended purpose" (Dkt 63 at 6). "A building or any part of a building that is in danger of falling down or caving in is not considered to be in a state of collapse" (Id). 
With regard to the real property coverage, the policy has an exclusion for loss caused by "freezing, thawing, pressure, or weight of water or ice, whether driven by wind or not, to a ...foundation, retaining wall...." (Id at 12). The policy also has exclusions for loss caused by "wear and tear, aging, marring, scratching, or deterioration," "rust or other corrosion, mold, fungi, wet or dry rot," and for "settling, shrinking, bulging, or expansion" (Id at 13). Finally, the policy has an exclusion for loss caused by "faulty, inadequate, or defective maintenance" (Id at 13-14). 
On July 12, 2013, plaintiffs submitted a claim to Encompass for damage to the brick siding, or facade, of their home, which was bulging in an area near the front door. Encompass engaged H2M Architects and Engineers to inspect the home and issue a report (Dkt 43). 
After a site inspection on July 17, 2013, H2M determined that the brick facade near the front door was separated from the house; the greatest area of separation was at the top of the brick facade, where the brick was separated three inches from the underlying material. Immediately above the brick, a twelve inch wood trim, separating the brick from the stucco finish was warped. Photos taken by the inspector showed that the bricks had separated in the area, the mortar joints were cracked, and there were cracks and deterioration in the mortar. Above a window in the area, the metal lintel was rusty and showed signs of separation following the movement of the brick. In the vicinity of the roof line above the separated brick, the gutter was observed to be dented. 
H2M concluded that, "The overall condition of the brick facade is in poor condition throughout the house and is [in] need of repairs and/or replacement." H2M concluded that the separation of the brick facade was caused by "water infiltration behind the wood trim and brick facade, occurring over a several year period." H2M stated that the "age of the structure in combination with a lack of maintenance" of the mortar joints, weatherproofing of the windows, and wood trim "appears [to have] resulted in moisture infiltrating behind the brick facade." The moisture "in combination with freeze and thaw cycles" deteriorated the bond between the brick facade mortar and the wood sheeting "causing a separation of the brick from the house as well as a warping and rotting of the wooden transition trim." On August 7, 2013, Encompass denied the claim based on the exclusions for "freezing, thawing," "wear and tear," and "inadequate maintenance" (Dkt 44). 
In October 2014, plaintiffs retained Diego Fernandez, a general contractor specializing in masonry and carpentry, to replace the stucco and wood trim in the house. In his affidavit, [*3]Fernandez states that another contractor had removed the bricks in the area near the front door of the home (Dkt 107). Fernandez states that the wooden vertical studs and horizontal plates that comprised the supporting frame of the house were in a severe state of decay (Id ¶ 3). The vertical studs were hanging unattached to the horizontal plates and other vertical studs were crumbling, leaving the structure without support in that area. A third contractor had installed temporary interior framing in the living room, dining room, and basement to prevent further collapse (Id). Fernandez concluded that the upper half of the house was "dangerously" supported by the decorative brick rather than the wooden frame (Id). When Fernandez removed a section of the stucco adjoining the bricks near the front door, he found more decayed framing that was not supporting the house as it was intended (Id ¶ 4). Fernandez immediately installed temporary exterior supports, as well as temporary interior framing, to prevent further collapse of the building (Id). Based upon Fernandez' findings, plaintiffs requested Encompass to reconsider the claim.
On October 10, 2014, Eagle Adjusting Services performed an inspection on behalf of Encompass (Dkt 45). Eagle determined that, "Water is getting in behind the stucco and the brick siding." Eagle observed that the trim embedded in the stucco was "rotten and missing in most areas. The steel lintels over the windows [were] sagging and allowing the bricks to crack due to a lack of structural support." Eagle was of the opinion that, "These issues have been going on for an extended period of time." Eagle stated that, "[I]t is obvious that there are issues behind the stucco," referring to the condition of the second and third floors. On November 5, 2014, Encompass again denied the claim based upon the exclusions for "collapse," "wear and tear," "wet or dry rot," "settling, shrinking, bulging," and "inadequate maintenance" (Dkt 46). 
On June 29, 2015, plaintiffs commenced this action in Supreme Court, Westchester County. Plaintiffs allege that the loss was caused by the collapse of the building caused by hidden decay. In the first cause of action, plaintiffs assert a claim for damages for breach of the policy. Plaintiffs estimate the cost of repairing their home to be approximately $100,000. In the second cause of action, plaintiffs seek a declaratory judgment that the collapse of their home was caused by "interior hidden decay" and is a loss covered by the terms of the policy. In its answer dated August 13, 2015, defendant denies coverage and asserts various defenses, including that the claim is barred by exclusions contained in the policy. By order dated February 14, 2017, Deputy Chief Administrative Judge Michael Coccoma assigned the matter to the undersigned.
By notice of motion dated August 14, 2017, defendant moves for summary judgment dismissing the complaint. Defendant argues that the loss is not covered by the additional coverage for "collapse" because the property did not "abruptly fall down or cave in." Additionally, defendant argues that the loss is excluded by the policy exclusions covering wear and tear, wet or dry rot, and settling, shrinking, bulging. Defendant requests a declaratory judgment that the policy does not cover the loss alleged in the complaint.
In opposition, plaintiffs argue that loss is covered by the provision covering collapse caused by hidden decay. Additionally, plaintiffs argue that defendant has failed to submit admissible evidence that any of the policy exclusions apply.
In determining a dispute over insurance coverage, the court looks first to the language of the policy (Roman Catholic Diocese v Nat'l Union Fire Ins, 21 NY3d 139, 148 [2013]). Contracts of insurance, like other contracts, are to be construed according to the sense and [*4]meaning of the terms which the parties have used, and if they are clear and unambiguous the terms are to be taken and understood in their plain, ordinary, and proper sense (Ministers & Missionaries Benefit Bd v Fleshner, 26 NY3d 466, 479 [2015][Abdus-Salaam, J., dissenting]). The court must construe the policy in a way that affords a fair meaning to all of the language employed by the parties in the contract and leaves no provision without force or effect (Roman Catholic Diocese v Nat'l Union Fire Ins, supra, 21 NY3d at 148). To negate coverage by virtue of an exclusion, an insurer must establish that the exclusion is stated in clear and unmistakable language, is subject to no other reasonable interpretation, and applies in the particular case (Belt Painting Corp. v TIG Ins, 100 NY2d 377, 383 [2003]). The policy must be construed in favor of the insured, and any ambiguities are to be resolved in the insured's favor (U.S. Fid. & Guar v Annunziata, 67 NY2d 229, 232 [1986])
Because the policy provides that coverage applies for the collapse of "any part" of the building, it is clear that the whole building need not collapse. However, because the policy provides that the collapse must be such that the building "cannot be occupied for its intended purpose," it is clear that minor decay damage will not give rise to a claim. 
While the cases cited by defendant confirm that minor decay damage will not constitute a "collapse" within the meaning of the policy, they do not establish that serious structural damage of the type sustained by plaintiffs will not give rise to a claim. Thus, in Squaires v Safeco Nat'l Ins, 136 AD3d 1393 [4th Dept. 2016]), decay damage to four exterior posts supporting a second floor deck did not constitute a "collapse," even though the deck was "structurally integrated" into the building. In Viscosi v Preferred Mut Ins, 87 AD3d 1307 [4th Dept. 2011]), the seepage of rain water into the ceiling of several rooms did not constitute a collapse covered by the policy. 
Nor will severe cracking and bulging in the exterior brick facade result in a "collapse," if the structure of the building is not effected (Rapp B. Properties RLI Ins, 65 AD3d 923 [1st Dept. 2009]; Rector St Food Enterprises v Fire & Cas Ins, 35 AD3d 177 [1st Dept. 2006]). Rather, the collapse must significantly effect the structure of the building. Residential Mgmt v Fed Ins Co., 884 F. Supp.2d 3 (EDNY 2012]) upon which defendant also relies, is inapposite. In that case, damage to the steel frame supporting a water tank fell within the exclusion for damage caused by rust and corrosion. Moreover, the exclusion in the Residential Mgmt policy was broader than the exclusion in the present case in that it excluded damage caused by "decay."
On a motion for summary judgment, it is the proponent's burden to make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to demonstrate the absence of any material issues of fact (JMD Holding Corp. v. Congress Financial Corp., 4 NY3d 373, 384 [2005]). Failure to make such a prima facie showing requires denial of the motion, regardless of the sufficiency of the opposing papers(Id). However, if this showing is made, the burden shifts to the party opposing the summary judgment motion to produce evidentiary proof in admissible form sufficient to establish the existence of material issues of fact which require a trial (Alvarez v. Prospect Hospital, 68 NY2d 320, 324 [1986]).
The affidavit of Diego Fernandez, submitted by plaintiffs, establishes prima facie that the vertical studs supporting the second floor had collapsed from decay. Because the collapsed studs could not be seen until the bricks and stucco were removed, plaintiff has established prima facie that the collapse was caused by hidden decay. The burden shifts to defendant to show a triable issue as to whether the collapse was caused by hidden decay or whether any policy exclusion [*5]applies. 
Focusing primarily on the exterior facade, defendant's experts were of the opinion that the home had not been properly maintained. However, the experts failed to explain how more regular maintenance would have uncovered the hidden decay. Thus, the experts' opinions are merely conclusions. Defendant has failed to show evidence of a triable issue as to whether the collapse of the supporting studs was caused by hidden decay.
Defendant having failed to establish prima facie entitlement to judgment, defendant's motion for summary judgment dismissing the complaint is denied. Upon searching the record, summary judgment is granted to plaintiffs to the extent of declaring that the loss is covered by the policy. In view of this disposition, plaintiffs' cross-motion for sanctions for spoliation of evidence is denied. Counsel are directed to appear before this court at 9:30 am on February 28, 2018 for the purposes of scheduling a trial as to damages.
So ordered.
Date: January 25, 2018
__________________________
J.S.C.